1  Kevin P. Bundy (CA Bar No. 231686)
   Center for Biological Diversity
2  351 California Street, Suite 600
   San Francisco, CA 94104
3  Phone: (415) 436-9682 x 313
   Fax: (415) 436-9683
4  Email: kbundy@biologicaldiversity.org

5  Attorney for Plaintiff Center for Biological Diversity

6

7

8                    **UNITED STATES DISTRICT COURT**
               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9                  **SAN FRANCISCO/OAKLAND DIVISION**

10

11

12  CENTER FOR BIOLOGICAL DIVERSITY,          )   Case No.
                                              )
13          Plaintiff,                        )   **COMPLAINT FOR DECLARATORY**
        v.                                    )   **AND INJUNCTIVE RELIEF**
14                                            )
    LISA P. JACKSON,                          )   (Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*)
15  in her official capacity as Administrator of the )
    Environmental Protection Agency; and      )
16  ENVIRONMENTAL PROTECTION AGENCY,          )
                                              )
17          Defendants.                       )
                                              )
18

19

20

21

22

23

1

**INTRODUCTION**

2      1.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY challenges the failure of

3   Defendant LISA P. JACKSON, Administrator of the United States Environmental Protection

4   Agency ("EPA") to perform mandatory duties required by three provisions of the Clean Air Act

5   (the "Act"), 42 U.S.C. §§ 7401-7671q.  First, EPA has a mandatory duty to make a

6   determination whether 13 nonattainment areas in Alaska, Arizona, Idaho, Montana, and Nevada

7   have attained the National Ambient Air Quality Standard for particulate matter less than 10

8   microns in diameter ("PM-10").  Second, EPA has a mandatory duty to impose sanctions and

9   create a Federal Implementation Plan for PM-10 for two areas in Arizona where EPA has already

10  made a finding of a failure to submit a sufficient State Implementation Plan.  Third, EPA has a

11  mandatory duty to issue a determination that Montana has failed to submit a sufficient State

12  Implementation Plan for two PM-10 nonattainment areas in Montana because the state failed to

13  submit a State Implementation Plan by the date it was required to do so.  EPA has failed to

14  complete all these duties.  The Center for Biological Diversity thus brings this action to prevent

15  direct and irreparable harm to the interests of its staff and members resulting from PM-10

16  pollution.

17

**JURISDICTION**

18      2.      This case is a Clean Air Act citizen suit.  Therefore, the Court has jurisdiction

19  over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. §

20  7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air

21  Act).  The relief sought is authorized by 28 U.S.C. § 2201 (declaratory judgment) and 28 U.S.C.

22  § 2202 (injunctive relief).

23

1

28

COMPLAINT

1                           **INTRADISTRICT ASSIGNMENT**

3.        A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco. Accordingly, assignment to the San Francisco Division or the Oakland Division is proper pursuant to Civil L.R. 3-2(c) and (d).

                                                **VENUE**

4.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because defendant EPA resides in this judicial district. Venue also is proper in this court pursuant to 28 U.S.C. § 1391(e) because this civil action is brought against an officer of the United States acting in her official capacity and under the color of legal authority and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. Several of the claims at issue in this action involve EPA's failure to perform mandatory duties related to air quality standards and planning in Arizona and Nevada. EPA Region 9, whose jurisdiction includes Arizona and Nevada, is headquartered in San Francisco. Thus several of the events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco.

                                              **NOTICE**

5.        To the degree such notice may be required by law, the Center for Biological Diversity has provided notice under the Clean Air Act, *see* 42 U.S.C. § 7604(b)(2), by sending EPA written notice of intent to sue regarding the violations alleged in this Complaint. Notice was provided by certified mail, return receipt requested, on February 5, 2010. More than sixty days have passed since the Center for Biological Diversity mailed this notice of intent to sue letter. EPA has not remedied the violations alleged in this Complaint. Therefore, a present and

2

COMPLAINT

28

1   actual controversy exists between Defendants and the Center for Biological Diversity pursuant to

2   the Clean Air Act.

3   **PARTIES**

4   6.   Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-

5   profit 501(c)(3) corporation incorporated in New Mexico with its primary offices in Tucson,

6   Arizona and San Francisco, California.  The Center has over 40,000 active members throughout

7   the United States and the world.  The Center is actively involved in species and habitat

8   protection issues throughout the United States, including the areas of Arizona, Nevada, Montana,

9   Idaho, and Alaska at issue in this action.

10   7.   The Center and its members and staff include individuals with varying interests in

11   wildlife species and their habitat ranging from scientific, professional, and educational to

12   recreational, aesthetic, moral, and spiritual interests.  Further, the Center's members and staff

13   enjoy, on an on-going basis, the biological, scientific, research, educational, conservation,

14   recreational and aesthetic values of the regions inhabited by these species, including the regions

15   of Alaska, Arizona, Idaho, Montana, and Nevada at issue in this action.  The Center's staff and

16   members observe and study native species and their habitat, and derive professional, scientific,

17   educational, recreational, aesthetic, inspirational, and other benefits from these activities and

18   have an interest in preserving the possibility of such activities in the future.  The Center and its

19   members and staff have participated in efforts to protect and preserve natural areas, including the

20   habitat essential to the continued survival of native species, and to address threats to the

21   continued existence of these species, including the threats posed by air pollution and other

22   contaminants.

23

28

3

COMPLAINT

8.     Members and staff of the Center live, work, recreate and travel throughout the PM-10 nonattainment areas at issue in this case in Alaska, Arizona, Idaho, Montana, and Nevada, and areas impacted by the pollution from these nonattainment areas, and they will continue to do so on a regular basis.  PM-10 pollution can be inhaled deeply into the lungs, causing or exacerbating health problems including respiratory symptoms, decreased lung capacity, aggravated asthma, chronic bronchitis, irregular heartbeat, nonfatal heart attacks, and premature death in people with heart and lung disease.  PM-10 pollution also is transported by winds over long distances and deposited in natural areas, resulting in damage to waters, soils, sensitive forests, and ecosystems as well as acid rain.  PM-10 pollution also causes regional haze that limits visibility in the natural areas.  The natural areas affected by PM-10 pollution include areas at issue in this case, and areas affected by pollution emanating from the areas at issue in this case, where the Center's staff and members travel and expect to travel in the course of using and enjoying native wildlife species and their natural habitats.  The Center's staff and members, as well as the public, also may be forced to breathe air in these areas that is below the minimum quality required under the Act.  As a result, EPA's failure to ensure that these areas are in compliance with PM-10 standards under the Act directly threatens both the health, welfare, and economic interests of the Center's staff and members and their use and enjoyment of wildlife species and the natural areas that provide their habitat.  EPA's failure to perform the mandatory duties at issue in this action directly and irreparably injures the interests of the Center and its members and staff.

9.     The Center has also suffered informational and procedural injuries from the EPA's failure to comply with the Act's mandatory requirements.  These injuries are connected to the Center's substantive conservation, recreational, scientific, and aesthetic interests.  The

4

COMPLAINT

1   Center's members and staff rely on EPA's compliance with the Act in order to achieve

2   organizational purposes, including monitoring of the environment and management of wildlife

3   and natural areas throughout the western United States; monitoring compliance with the law

4   concerning native species; educating staff, members, and the public about threats to wildlife

5   species and their habitat; and advocating policies that protect wildlife in its natural habitat.

6   EPA's failure to determine whether areas at issue in this case are complying with air quality

7   standards under the Act, and its failure to ensure that areas at issue in this case are subject to

8   enforceable plans for achieving compliance with air quality standards, deprives the Center and

9   its staff and members of information germane to the Center's efforts to conserve and protect

10  wildlife and their habitat as well as information relevant to the use and enjoyment of wildlife in

11  natural areas by the Center's staff and members.  EPA's failure to comply with mandatory duties

12  under the Act also has deprived the Center, its staff, and its members of the opportunity to

13  review and comment upon state and federal plans to ensure compliance with air quality

14  standards.

15          10.     EPA's failure to timely perform the mandatory duties described herein adversely

16  affects the Center and its staff and members, and deprives them of health, welfare, and

17  procedural protection and opportunities as well as information to which they are entitled to under

18  the Act.  Those injuries will continue unless the Court grants the relief requested herein.  The

19  Center brings this action on its own behalf and on behalf of its adversely affected members and

20  staff.

21          11.     Defendant LISA P. JACKSON is the Administrator of the United States

22  Environmental Protection Agency.  In that role Administrator Jackson has been charged by

23

28

5

COMPLAINT

1    Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue

2    in this case.  Administrator Jackson is sued in her official capacity.

3         12.    Defendant the ENVIRONMENTAL PROTECTION AGENCY is the federal

4    agency charged with implementing the Act and ensuring that the states comply with their

5    responsibilities under the Act.

6                                **GENERAL ALLEGATIONS**

7         13.    The Clean Air Act aims to "protect and enhance the quality of the Nation's air

8    resources…."  42 U.S.C. § 7401(b)(1).  To promote this, the Act requires the Administrator to

9    set National Ambient Air Quality Standards ("NAAQS") for certain pollutants, including PM-

10   10.  National Ambient Air Quality Standards establish maximum allowable concentrations in the

11   air of these pollutants.

12        14.    Each National Ambient Air Quality Standard must be stringent enough to prevent

13   adverse effects on public health and welfare.  Effects on welfare include, but are not limited to,

14   effects on soils, water, vegetation, manmade materials, wildlife, visibility (i.e., haze), climate,

15   damage to property, economic impacts, and effects on personal comfort and well-being.

16        15.    EPA adopted National Ambient Air Quality Standards for PM-10 in 1987

17   pursuant to the Act.  The adopted standards include limitations on the concentration of PM-10 in

18   the ambient air.  PM-10 National Ambient Air Quality Standards were intended to protect public

19   health and welfare.

20        16.    Eagle River, Alaska was designated by operation of law as a "nonattainment

21   area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed.

22   Reg. 11101, 11103 (March 15, 1991).

23

6

COMPLAINT

28

17.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), Eagle River was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Its attainment date for the PM-10 National Ambient Air Quality Standard is December 31, 1994.  58 Fed. Reg. 13572, 13574 (March 12, 1993) (proposed rule); 58 Fed. Reg. 43084, 43084 (Aug. 13, 1993) (final rule).

18.     Mendenhall Valley, Alaska was designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

19.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), Mendenhall Valley was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Its attainment date for the PM-10 National Ambient Air Quality Standard was December 31, 1994.  59 Fed. Reg. 13884, 13885 (March 24, 1994).  EPA extended this date to December 31, 1995.  60 Fed. Reg. 47276, 47277-78 (Sept. 12, 1995).

20.     The Paul Spur and Douglas planning areas of Cochise County, Arizona, were designated by operation of law as "nonattainment areas" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

21.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Paul Spur and Douglas planning areas of Cochise County were classified as "moderate" PM-10 nonattainment

7

COMPLAINT

areas.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as

nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were

classified as moderate nonattainment areas at that time.").  These areas' attainment date for the

PM-10 National Ambient Air Quality Standard is December 31, 1994.  42 U.S.C. § 7513(c)(1).

22.    The Nogales area in Santa Cruz County, Arizona was designated by operation of

law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C.

§ 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

23.    Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Nogales area was

classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll

of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the

[1990] Amendments were classified as moderate nonattainment areas at that time.").  Its

attainment date for the PM-10 National Ambient Air Quality Standard is December 31, 1994.  42

U.S.C. § 7513(c)(1).

24.    The Hayden planning area in Arizona was designated by operation of law as a

"nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. §

7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

25.    Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Hayden planning

area was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15,

1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon

enactment of the [1990] Amendments were classified as moderate nonattainment areas at that

time.").  Its attainment date for the PM-10 National Ambient Air Quality Standard is December

31, 1994.  *See* 72 Fed. Reg. 14422, 14424 (March 28, 2007).

8

COMPLAINT

26.     Bonner County, Idaho, which contains the Sandpoint area, was designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

27.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), Bonner County, which contains the Sandpoint area, was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Its attainment date for the PM-10 National Ambient Air Quality Standard was December 31, 1994.  60 Fed. Reg. 44452, 44456 (Aug. 28, 1995).  EPA extended this date to December 31, 1995.  61 Fed. Reg. 20730, 20731 (May 8, 1996).

28.     Power-Bannock Counties, Idaho were designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

29.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), Power-Bannock Counties were classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Their attainment date for the PM-10 National Ambient Air Quality Standard was December 31, 1994.  60 Fed. Reg. 44452, 44454 (Aug. 28, 1995).  EPA extended this date twice: first to December 31, 1995, 61 Fed. Reg. 20730, 20731 (May 8, 1996), and then again to December 31, 1996.  61 Fed. Reg. 66602, 66604 (Dec. 18, 1996).  In 1998, EPA separated the Fort Hall Indian Reservation nonattainment area from state lands within the Power-Bannock nonattainment area, with both areas retaining the moderate nonattainment area designation

9

COMPLAINT

previously applicable to the entire Power-Bannock area.  63 Fed. Reg. 59722, 59729 (Nov. 5, 1998).

30.     The Columbia Falls area in Flathead County, Montana was designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

31.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Columbia Falls area in Flathead County was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Its attainment date for the PM-10 National Ambient Air Quality Standard is December 31, 1994.  42 U.S.C. § 7513(c)(1).

32.     The Ronan and Polson areas in Lake County, Montana were designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

33.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Ronan and Polson areas in Lake County were classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Their attainment date for the PM-10 National Ambient Air Quality Standard is December 31, 1994.  42 U.S.C. § 7513(c)(1).

34.     The Libby and vicinity areas of Lincoln County, Montana were designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

10

COMPLAINT

35.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Libby and vicinity areas of Lincoln County were classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Their attainment date for the PM-10 National Ambient Air Quality Standard is December 31, 1994.  42 U.S.C. § 7513(c)(1).

36.     The Lame Deer area in Rosebud County, Montana was designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

37.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Lame Deer area in Rosebud County was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment areas at that time.").  Its attainment date for the PM-10 National Ambient Air Quality Standard is December 31, 1994.  42 U.S.C. § 7513(c)(1).

38.     The Reno planning area (hydrographic area 87) of Washoe County, Nevada was designated by operation of law as a "nonattainment area" for PM-10 pursuant to section 107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B).  56 Fed. Reg. 11101, 11103 (March 15, 1991).

39.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Reno planning area of Washoe County was classified as a "moderate" PM-10 area.  *See* 56 Fed. Reg. 11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by operation of law upon enactment of the [1990] Amendments were classified as moderate nonattainment

11

COMPLAINT

1    areas at that time."). Its attainment date for the PM-10 National Ambient Air Quality Standard

2    was December 31, 1994. 66 Fed. Reg. 1268, 1268 (Jan. 8, 2001).

3          40.     EPA determined pursuant to section 188(b)(2) of the Act, 42 U.S.C. § 7513(b)(2),

4    that the Reno planning area of Washoe County failed to attain the 24-hour PM-10 standard by

5    the Clean Air Act mandated attainment date for moderate PM-10 nonattainment areas and it was

6    reclassified to serious nonattainment status, effective Feb. 7, 2001, by operation of law. 66 Fed.

7    Reg. 1268, 1269 (Jan. 8, 2001). Pursuant to section 188(c)(2) of the Act, 42 U.S.C. §

8    7513(c)(2), the Reno planning area's attainment date for the PM-10 National Ambient Air

9    Quality Standard is December 31, 2001. 66 Fed. Reg. 1268, 1269 (Jan. 8, 2001).

10         41.     The Las Vegas planning area (hydrographic area 212) of Clark County, Nevada

11   was designated by operation of law as a "nonattainment area" for PM-10 pursuant to section

12   107(d)(4)(B) of the Act, 42 U.S.C. § 7407(d)(4)(B). 56 Fed. Reg. 11101, 11103 (March 15,

13   1991).

14         42.     Pursuant to section 188(a) of the Act, 42 U.S.C. § 7513(a), the Las Vegas

15   planning area of Clark County was classified as a "moderate" PM-10 area. *See* 56 Fed. Reg.

16   11101, 11102 (March 15, 1991) ("[A]ll of the areas designated as nonattainment for PM-10 by

17   operation of law upon enactment of the [1990] Amendments were classified as moderate

18   nonattainment areas at that time."). Its attainment date for the PM-10 National Ambient Air

19   Quality Standard was December 31, 1994. 69 Fed. Reg. 32273, 32274 (June 9, 2004).

20         43.     In 1993, pursuant to section 188(b)(1) of the Act, 42 U.S.C. § 7513(b)(1), EPA

21   determined that the Las Vegas planning area could not practicably attain the PM-10 standard by

22   the Clean Air Act mandated attainment demonstration date for moderate PM-10 nonattainment

23   areas and reclassified the area to serious nonattainment status. 58 Fed. Reg. 3334, 3337 (January

12

COMPLAINT

28

8, 1993).  Pursuant to section 188(c)(2) of the Act, 42 U.S.C. § 7513(c)(2), the Las Vegas planning area's attainment date for the PM-10 National Ambient Air Quality Standard then became December 31, 2001.  69 Fed. Reg. 32273, 32274 (June 9, 2004).  In 2004, EPA, pursuant to section 188(e) of the Act, 42 U.S.C. § 7513(e), extended the attainment date for the Las Vegas planning area to December 31, 2006.  69 Fed. Reg. 32273, 32274 (June 9, 2004).

44.     Pursuant to section 189(a)(2)(A) of the Act, 42 U.S.C. § 7513a(a)(2)(A), states in which all or part of a "moderate area" designated nonattainment under 42 U.S.C. § 7407(d)(4) are located were required to submit State Implementation Plans by November 15, 1991 except for  provisions regarding permits for new and modified major stationary sources required under 42 U.S.C. § 7513a(a)(1)(A), which were due by no later than June 30, 1992.

45.     EPA is required to make a finding as to whether a State Implementation Plan submittal complies with the requirements of section 110(a)(2), 42 U.S.C. § 7410(a)(2), within six months of the submittal deadline, known as the completeness finding.  42 U.S.C. § 7410(k)(1)(B).  If EPA does not determine that a State Implementation Plan submittal fails to "meet the minimum criteria" required by the Act within six months, the submittal is deemed administratively complete by operation of law.  *Id.*

46.     Pursuant to section 110(k)(2) and (3), 42 U.S.C. § 7410(k)(2) and (3), EPA must then take final action on the State Implementation Plan submittal by approving in full, disapproving in full, or approving in part and disapproving in part within 12 months of the completeness finding.

47.      Montana was required to submit its moderate PM-10 nonattainment State Implementation Plan for the Ronan and Polson areas, except for any provision regarding permits

1  for new and modified major stationary sources, by November 15, 1991.  42 U.S.C. §

2  7513a(a)(2).  Montana failed to do so.

3        48.     Montana was required to submit its moderate PM-10 nonattainment State

4  Implementation Plan for the Lame Deer area, except for any provision regarding permits for new

5  and modified major stationary sources, by November 15, 1991.  42 U.S.C. § 7513a(a)(2).

6  Montana failed to do so.

7        49.     If EPA determines a state has failed to submit a sufficient State Implementation

8  Plan, and the deficiency is not corrected within 18 months, EPA has a mandatory duty to impose

9  one of two categories of sanctions on the state.  *See* 42 U.S.C. § 7509(a).  If one set of sanctions

10  has been imposed and the deficiency remains uncorrected for another six months, EPA must

11  impose the second set of sanctions.  *Id.*  EPA also has a mandatory duty to promulgate a Federal

12  Implementation Plan ("FIP") if EPA finds that a state has failed to submit an adequate State

13  Implementation Plan within two years after the deadline.  42 U.S.C. § 7410(c)(1).

14        50.     On December 16, 1991, EPA made a finding pursuant to 42 U.S.C. § 7410(k) that

15  the Douglas area in Cochise County, Arizona failed to submit a sufficient moderate PM-10 State

16  Implementation Plan by the November 15, 1991 deadline.  57 Fed. Reg. 19906, 19907 (May 8,

17  1992).

18        51.     On December 16, 1991, EPA made a finding pursuant to 42 U.S.C. § 7410(k) that

19  the Nogales area in Santa Cruz County, Arizona failed to submit a sufficient moderate PM-10

20  State Implementation Plan by the November 15, 1991 deadline.  57 Fed. Reg. 19906, 19907

21  (May 8, 1992).

22      ///

23      ///

14

COMPLAINT

28

1

**CLAIMS FOR RELIEF**

2

CLAIM ONE
(EPA's Failure to Determine Whether 12 Nonattainment Areas Have Attained)

3

52.      Plaintiff incorporates by reference paragraphs 1 through 51.

4

5

53.      Pursuant to sections 179(c)(1) and 188(b)(2), 42 U.S.C §§ 7509(c)(1) and

6

7513(b)(2), EPA has a mandatory duty to determine "not later than 6 months after [the

7

applicable attainment date]" whether a moderate or serious PM-10 nonattainment area has

8

attained the National Ambient Air Quality Standards ("NAAQS") by the applicable attainment

date.

9

54.      EPA also has a mandatory duty to publish notice in the Federal Register of its

10

determination as to whether an area has attained pursuant to sections 179(c)(2) and 188(b)(2), 42

11

U.S.C. §§ 7509(c)(2) and 7513(b)(2)(B).

12

55.      EPA was required to determine by June 30, 1995 whether Eagle River, Alaska

13

attained the PM-10 NAAQS.

14

56.      EPA was required to determine by June 30, 1996 whether Mendenhall Valley,

15

Alaska attained the PM-10 NAAQS.

16

57.      EPA was required to determine by June 30, 1995 whether Cochise County (Paul

17

Spur and Douglas areas), Arizona attained the PM-10 NAAQS.

18

58.      EPA was required to determine by June 30, 1995 whether the Nogales area of

19

Santa Cruz County, Arizona attained the PM-10 NAAQS.

20

59.      EPA was required to determine by June 30, 1995 whether the Hayden planning

21

area in Arizona attained the PM-10 NAAQS.

22

23

28

15

COMPLAINT

60.     EPA was required to determine by June 30, 1996 whether the Sandpoint area in Bonner County, Idaho attained the PM-10 NAAQS.

61.     EPA was required to determine by June 30, 1995 whether the Columbia Falls area in Flathead County, Montana attained the PM-10 NAAQS.

62.     EPA was required to determine by June 30, 1995 whether the Ronan and Polson areas of Lake County, Montana attained the PM-10 NAAQS.

63.     EPA was required to determine by June 30, 1995 whether the Libby and vicinity areas of Lincoln County, Montana attained the PM-10 NAAQS.

64.     EPA was required to determine by June 30, 1995 whether the Lame Deer area of Rosebud County, Montana attained the PM-10 NAAQS.

65.     EPA was required to determine by June 30, 1997 whether the moderate nonattainment area of Fort Hall Indian Reservation in Idaho attained the PM-10 NAAQS.

66.     EPA was required to determine by June 30, 2002 whether the serious nonattainment area of the Reno planning area in Washoe County, Nevada attained the PM-10 NAAQS.

67.     EPA failed to make any determination as to whether each of the areas listed in paragraphs 55-66 attained the PM-10 NAAQS.  EPA also failed to publish notice of its findings as to whether each of the areas listed in paragraphs 55-66 attained the NAAQS by the applicable date.

68.     Thus, EPA is in violation of its mandatory duty under sections 179(c)(1) and 188(b)(2) to make attainment determinations and its mandatory duty under sections 179(c)(2) and 188(b)(2) to publish notice of the findings.

16

COMPLAINT

CLAIM TWO
(EPA's Failure to Determine Whether the Las Vegas Planning Area of Clark County, Nevada Has Attained)

69.     Plaintiff incorporates by reference paragraphs 1 through 68.

70.     Pursuant to sections 179(c)(1) and 188(b)(2), 42 U.S.C §§ 7509(c)(1) and 7513(b)(2), EPA has a mandatory duty to determine no "later than 6 months after [the applicable attainment date]" whether an area in nonattainment has attained the NAAQS by the applicable attainment date.

71.     EPA also has a mandatory duty to  publish notice of a determination of whether an area has attained pursuant to sections 179(c)(2) and 188(b)(2), 42 U.S.C. §§ 7509(c)(2) and 7513(b)(2).

72.     EPA was required to determine by June 30, 2007 whether the Las Vegas planning area of Clark County, Nevada has attained the PM-10 NAAQS.

73.     EPA failed to make any determination as to whether the Las Vegas planning area of Clark County, Nevada has attained the PM-10 NAAQS.  EPA also failed to publish notice of any determination as to whether the area attained the NAAQS by the applicable date.

74.     Thus, EPA is in violation of its mandatory duty under sections 179(c)(1) and 188(b)(2) to make attainment determinations and its mandatory duty under sections 179(c)(2) and 188(b)(2) to publish notice of its findings.

CLAIM THREE
(Claim for Failure to Promulgate a Federal Implementation Plan under 42 U.S.C. § 7410(c)(1) and Failure to Impose Sanctions under 42 U.S.C. § 7509(a))

75.     Plaintiff incorporates by reference paragraphs 1 through 74.

76.     On December 16, 1991, EPA made a finding pursuant to 42 U.S.C. § 7410(k) that the following two areas in Arizona failed to submit a sufficient moderate PM-10 State

17

COMPLAINT

1   Implementation Plan by the November 15, 1991 deadline: the Douglas area in Cochise County,

2   and the Nogales area in Santa Cruz County.  57 Fed. Reg. 19906, 19907-08 (May 8, 1992).

3        77.     Arizona still has not submitted the submittals referenced in paragraph 76.

4        78.     This finding triggered an 18-month and 24-month clock for sanctions under

5   section 109(a), 42 U.S.C. § 7509(a), and a 24-month clock for promulgation of a FIP pursuant to

6   section 110(c)(1),  42 U.S.C. § 7410(c)(1).

7        79.     Thus, EPA has a mandatory duty to impose 18-month sanctions by June 16, 1993

8   and the 24-month sanctions and FIP by December 16, 1993, 42 U.S.C. § 7509(a).

9        80.     EPA has failed to approve any SIP for the Douglas area or the Nogales area.

10       81.     Therefore, EPA is in violation of the mandatory duty to promulgate a Federal

11  Implementation Plan as required by section 110(c)(1)(A), 42 U.S.C. § 7410(c)(1)(A).  EPA is

12  also in violation of the mandatory duty to impose sanctions under sections 179(b)(1) and (2), 42

13  U.S.C. §§ 7509(b)(1) & (2), on the Douglas area and the Nogales area.

14                          CLAIM FOUR
    (EPA Violated its Mandatory Duty to Find No SIP was Submitted Pursuant to 42 U.S.C. §
15                          7410(k)(1)(B))

16       82.     Plaintiff incorporates by reference paragraphs 1 through 81.

17       83.     EPA is required to determine no later than six months after the date "by which a

18  State is required to submit the plan or revision" whether the minimum criteria set pursuant to 42

19  U.S.C. § 7410(k)(1)(A) have been met.

20       84.     If there is no submittal, the minimum criteria could not have been met and EPA

21  must make a determination stating so.

22       85.     Montana was required to submit its moderate PM-10 nonattainment State

23  Implementation Plan for the Ronan and Polson areas of Lake County and the Lame Deer area of

                                 18

                              COMPLAINT

28

Rosebud County, except for any provision regarding permits for new and modified major stationary sources, by November 15, 1991. Montana failed to submit these State Implementation Plan submittals.

86.    EPA was required to determine whether the minimum criteria for the Ronan and Polson areas of Lake County were met by May 15, 1992.

87.    EPA was required to determine whether the minimum criteria for the Lame Deer area of Rosebud County were met by May 15, 1992.

88.    EPA has not determined whether Montana submitted its moderate PM-10 nonattainment State Implementation Plan for the Lame Deer area in Rosebud County and Ronan and Polson areas in Lake County.

89.    Therefore, EPA is in violation of the mandatory duty under section 110(k)(1)(B), 42 U.S.C. § 7410(k)(1)(B), to make a determination as to whether Montana failed to submit a moderate PM-10 State Implementation Plan for the Lame Deer area in Rosebud County and Ronan and Polson areas in Lake County.

**REQUEST FOR RELIEF**

WHEREFORE, the Center respectfully requests that the Court:

A.    Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform each mandatory duty listed above;

B.    Issue a mandatory injunction requiring the Administrator to perform her mandatory duties by certain dates;

C.    Retain jurisdiction of this matter for purposes of enforcing and effectuating the Court's order;

19

COMPLAINT

1   D.   Grant the Center its reasonable costs of litigation, including attorneys' and expert fees;

2        and

3   E.   Grant such further relief as the Court deems just and proper.

4

5

6

    Dated: April 29, 2010                        Respectfully submitted,

7

8

9

10                                               Kevin P. Bundy
                                                 Attorney for Plaintiff
                                                 Center for Biological Diversity

11

12   OF COUNSEL:

13

     Robert Ukeiley
14   Law Office of Robert Ukeiley
     435R Chestnut Street, Suite 1
15   Berea, KY 40403
     Tel: (859) 986-5402
16   Fax: (859) 618-1017
     E-mail: rukeiley@igc.org

17

18

19

20

21

22

23

                                                 20

                                            COMPLAINT

28